261 So.2d 922

**William M. MURRY, alias**

v.

**STATE.**

**6 Div. 228.**

Court of Criminal Appeals of Alabama.

May 9, 1972.

Joseph A. Colquitt, Tuscaloosa, for appellant.

William J. Baxley, Atty. Gen., and J. Victor Price, Jr., Asst. Atty. Gen., for the State.

TYSON, Judge.

The appellant, William M. Murry, alias, was indicted by the Grand Jury of Tuscaloosa County in a five-count indictment for burglary, second degree, two counts of grand larceny, and two counts of buying, receiving or concealing, or aiding in concealing certain personal property knowing the same was stolen, or having reasonable grounds to believe same to be stolen. The appellant was found guilty of grand larceny of a pistol, grand larceny of certain tire tools, and of receiving and concealing the alleged stolen pistol. Judgment and sentence was for a term of ten years imprisonment.

At trial the State presented the testimony of two deputy sheriffs, Officers Hubert Hallman and M. K. Shute, who described an evening while working the 11:00 p.m. until 8:00 a.m., or midnight shift, on the night of September 22, 23, 1970, in Tuscaloosa County. The officers stated that they were on routine patrol out Interstate 59 toward Birmingham when a vehicle approached from the rear at a high rate of speed. The officers estimated the appellant's speed at 65 or 70 miles an hour as he passed them, and that this was shortly before midnight. Because the appellant's car was swerving, the officers pulled their vehicle partly to the shoulder to allow the appellant's car to pass them. The officers then followed the car, noticed it was swerving or weaving, flashed their vehicle lights and pulled the appellant over. After looking at his driver's license and seeing it to be a Pennsylvania license with the name "slightly erased out," the officers then charged the appellant with reckless driving and took him to the county jail. No effort was made to search the appellant's vehicle at this time, but the officers did observe a large box containing more than fifty cartons of cigarettes and two iron bars or tire tools showing from the top of the box on the back seat of appellant's car. The appellant's vehicle was then parked on the county lot at the county jail.

A Mr. Glen Gilmore, who owned and operated Gilmore Garage in Tuscaloosa, testified that he closed his business about 7:00 in the evening of September 22, 1970, having secured all doors and windows. The following morning he received a call shortly after 6:00 to come to his garage, and upon arrival noted that one window was pried open and the lock on the front door broken and open. The call came from a Tuscaloosa policeman. Mr. Gilmore described a thirty-eight caliber six-cylinder pistol made in Sweden, he thought, as having been removed from the desk, and some three tire tools which were also missing. He further testified that some personalized checks with the name of Gilmore Garage, First National Bank of Tuscaloosa, were also missing. He identified the owner of the pistol as Raymond Bartlett. The missing tire tools and checks were identified by Mr. Gilmore.

Mr. Raymond Bartlett then identified the pistol in question, stating that it was Spanish make, and that he had purchased it from a retired Tuscaloosa police officer and had taken the pistol on a fishing trip with Mr. Gilmore and upon return left it at Mr. Gilmore's garage in his desk.

On the following morning, shortly after 8:00, the two county officers testified that they had received telephone calls from the Tuscaloosa city police and that Chief Miller and Captain Jones discussed two appar-

ent burglaries which had occurred in Tuscaloosa during the previous night. One of these was of a Winn-Dixie food store located at the West Plaza Shopping Center, and the other was Gilmore Garage, approximately a block away. The fact of the Winn-Dixie burglary was made known to Officer Hubert Hallman, who then went before Justice of the Peace Betty B. Rushing, and obtained a search warrant at 11:15 a.m. on the morning of September 23, 1970. Deputy Hallman, accompanied by Deputies Miller and Palmer, then went to the county parking lot after the appellant had been allowed to telephone Tuscaloosa Attorney Gordon Davis, who appeared at the lot with the appellant, and the search warrant was served on them at 11:30 a.m., September 23, 1970. The appellant's vehicle was then opened, being a 1961 Oldsmobile, and some 266 cartons of cigarettes were removed from the box on the back seat, and from the trunk of the appellant's vehicle. Three tire tools were found, two in the box on the back seat and one from the trunk; a thirty-eight caliber Spanish make six-cylinder pistol was found in the trunk wrapped in checks made for Gilmore Garage, and also four T.V. trays were removed from the trunk. There was certain literature also found in the trunk. Appellant, through his counsel, filed a pretrial motion to suppress the State's evidence based on unlawful search and seizure of the appellant's automobile. Appellant also moved to exclude the State's evidence at the conclusion of same.

The challenged affidavit in the search warrant is as follows:

"AFFIDAVIT FOR SEARCH WARRANT

"JUSTICE OF THE PEACE COURT OF BETTY B. RUSHING

"STATE OF ALABAMA

"COUNTY OF TUSCALOOSA

"The undersigned being duly sworn deposes and says:

"That he (has reason to believe) that on the _____ that in an automobile or motor vehicle described as follows: 1961 Blue Oldsmobile, 4 Door Bearing Alabama License No. 1–48595 Year 1970, there is now being concealed certain property, namely various Brands of cigarettes, auto parts, which are unlawfully in the possession of Melvin Harris X in violation of Title _____, Section _____, Code of Alabama, Recompiled 1958.

"And that the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: *Affiant* stated that on September 23, 1970 at approximately 1:15 A.M. Deputies *M. K. Shute and Hubert Hallman were patrolling in Tuscaloosa County* at a point about six (6) miles South of Caffee Junction on I–59 in the County of Tuscaloosa on I–59. Officers Hallman & Shutes observed a vehicle approaching their vehicle from the rear at a high rate of speed and at such a speed as appeared to be hazardous and excessive under the prevailing conditions. Officer Hallman turned his said vehicle to the right in order to get onto the shoulder of the highway he was traveling upon and out of the path of the said approaching vehicle. The said approaching vehicle, later determined to be a 1961 Oldsmobile, bearing Alabama License Plate No. 1–48595, served into the left lane and passed Officer Shute and Hallman at a speed in excess of the speed limit and at a speed, which was hazardous and excessive for the said time and place. The said 1961 Oldsmobile automobile then swerved back into its right lane, the lane in which the said Officers had been travelling, in a dangerous manner. At this time Officer Hallman turned on his law enforcement flashing light and caused the driver of the said 1961 Oldsmobile to come to a stop on the shoulder of its right lane. At this time, Deputy Hallman asked for the driver's license of the operator of the said 1961 Oldsmobile.

The operator identified himself as William M. Murray, later determined to be Melvin Harris X. At this point the said deputies noticed a large cardboard carton on the rear seat of the said 1961 Oldsmobile. The said carton was open and contained numerous cartons of cigarettes of various brands. On the top of the said cigarette cartons in the said large cardboard carton were two crowbars, visible from the outside.

"Deponent shows that based on the above and foregoing facts and information, he has probable cause to believe that the aforesaid property is concealed upon the aforesaid (vehicle) and is subject to seizure and makes this affidavit so that a search warrant may issue for the aforesaid (vehicle).

"/s/ Hubert Hallman
AFFIANT

"Sworn to and subscribed before me this the 23 day of September, 1970.

"/s/ Betty B. Rushing"

Appellant contends that the search and seizure were unlawful inasmuch as the affidavit in the search warrant wholly failed to set forth a case of probable cause, and further that the search not being incident to the arrest of appellant, that those items seized were unlawfully taken since the search warrant was defective.

The testimony at trial of Mrs. Betty Rushing, Justice of the Peace, was that she did not ask Deputy Hallman any questions at the time of issuing the search warrant, but simply put the officer under oath and allowed him to swear that the statements made in the affidavit were true and correct. This was all the evidence before her at the time she determined that there was probable cause to issue the warrant on the morning of September 23, 1970, at 11:15 a.m. In determining the legality of the right to search a vehicle, the Supreme Court of the United States in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, stated:

" ' The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.'

" 'The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes had contraband * * *' "

Further, in Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, the Court stated that:

" 'In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

" ' "The substance of all the definitions" of probable cause "is a reasonable ground for belief of guilt." McCarthy v. De Armit, 99 Pa. 63, 69, quoted with approval in the Carroll opinion. 267 U. S. at page 161, 45 S.Ct. at page 288, 69 L.Ed. 543, 39 A.L.R. 790. And this "means less than evidence which would justify condemnation or conviction * * *' "

In the case at bar, since it affirmatively appears that the appellant had been arrested on the evening before the search, for reckless driving, there is no question here of a search incident to a lawful arrest. The appellant having been placed in jail the evening before and his automobile taken to the county parking lot next to the jail, there could be no question that the suspect would flee with the vehicle. Therefore, the search, and seizure the following day, must depend on factors estab-

lishing "probable cause" since the arrest the night before and the search in question were too remote in point of time and place. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777.

In Knox v. State, 42 Ala.App. 578, 172 So.2d 787, cert. denied 277 Ala. 699, 172 So.2d 795, this Court stated:

"Under authority of the Aguilar [Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723] case, and the Ker [Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726] and Nathanson [Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159] cases cited therein, we are compelled to hold, and do hold, that an affidavit which recites the affiant's belief of the matters contained therein, without supporting facts or circumstances upon which a finding of probable cause could be based, is insufficient to support a search warrant; and evidence seized as a result of a search warrant issued upon such an affidavit must be excluded in the absence of a showing by the State that, in addition to the matters contained in the affidavit, other information was before the magistrate from which a finding of probable cause could be based.

"Inasmuch as a defendant may now object to the introduction of illegally seized evidence for the first time at the trial, we are of the opinion that a defendant would be denied his substantial rights if he could not raise the question of whether a search warrant under which evidence is seized was issued upon probable cause, supported by oath or affirmation. Thus, we hold that when a defendant objects to the introduction of evidence seized under a search warrant, on the ground that there was no probable cause for the issuance of the warrant, the trial judge should determine if the warrant is supported by a sufficient affidavit. We do not here decide whether a defendant may go behind the warrant and affidavit

to show there was no probable cause for the issuance of the warrant."

We thus reach the point in this case with reference to the defective affidavit which in *Knox* was not necessary for determination.

█ In making a determination of probable cause to issue a search warrant, the issuing magistrate must have placed before him sufficient information from which he may judge independently whether or not probable cause exists to support a warrant. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503. The magistrate cannot rely upon other factors not set forth in the affidavit and not made known to the magistrate but which are within the personal knowledge of the complaining officer. Giordenello v. United States, supra.

The affidavit in the instant case fails to specify that a crime was committed or is being committed, or that the fruits of such crime are those which are being concealed upon the vehicle sought to be searched. Frey v. State, 3 Md.App. 38, 237 A.2d 774; Scott v. State, 4 Md.App. 482, 243 A.2d 609.

█ Measured by the aforesaid standards, the affidavit here is simply a conclusory statement of the officer that certain cigarettes and automobile tools are concealed in the vehicle without any supporting facts whatsoever to show the basis for such belief. No facts are here shown connecting the cigarettes and automobile tools with any burglary or other crime with which the appellant is here charged. The determination of probable cause must be by a neutral and detached magistrate, and not by an officer engaged in the often competitive enterprise of ferreting out crime. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637.

█ We therefore hold that the affidavit in question is deficient as above set

forth. Therefore, the warrant issued in conjunction with this and the resulting search and seizures were unlawful. The appellant's motion to suppress and the motion to exclude the State's evidence should have been therefore granted.

## II

The jury's verdict in the case at bar is as follows:

"'We, the Jury, find the defendant guilty of: Grand Larceny as charged in Count II; Grand Larceny as charged in Count III; and Receiving and Concealing of Stolen Property as charged in Count IV in the indictment. Wm. B. McGuire, Foreman.'"

The question of whether or not the jury would return a general or specific verdict as to certain counts in the indictment was within their province. Jackson v. State, 249 Ala. 348, 31 So.2d 519.

However, a party may not be convicted of two distinct felonies growing out of the same identical act. Brown v. State, 236 Ala. 423, 183 So. 412, and cases cited.

Since the conviction of either grand larceny of the pistol or of receiving and concealing the same stolen pistol are both felonies for which equal punishment may be had, a conviction under one count in the indictment would be an automatic acquittal under the other count. Booker v. State, 151 Ala. 97, 44 So. 56. See also Rogers v. State, 17 Ala.App. 175, 83 So. 359; Leonard v. State, 18 Ala.App. 427, 93 So. 56.

What we have written above being true, and since it is settled law that "one single transaction or state of facts cannot be so split up as to convict the defendant of several separate and distinct offenses" (See Trawick v. City of Birmingham, 23 Ala.App. 308, 125 So. 211, cert. denied 220 Ala. 291, 125 So. 212), the trial judge ex mero motu should have directed the jury to either bring in a general verdict or reference their verdict to either Count II or Count IV of the indictment in this case, but not both. Landers v. State, 26 Ala. App. 506, 162 So. 550. See also Title 15, Section 287, Code of Alabama 1940 (Recompiled 1958).

For the foregoing reasons, this judgment of conviction is due to be reversed and the cause is remanded.

Reversed and remanded.

PRICE, P. J., and CATES and ALMON, JJ., concur.